All right, our last case of the day is Austin Gates v. Hassan Khokar. We're ready for the argument from Ms. Rashad. Is that correct? How do you pronounce your last name? Shahar. Shahar. I'm sorry, I have the wrong name listed here and I apologize for that. All right. I just want to note that our state attorney chair, Ms. Sherry Barrett, is joining us this morning. All right. And we are representing the state of Atlanta and in this case, particularly, Atlanta Police Officer Khokar, Department of Law Enforcement, and the community of Atlanta. And I just want to start by also thanking you all for accommodating this morning's hearing. All right. Thank you. All right, Ms. Shahar. The defendant also has prayed that they be granted qualified and official immunity for enforcing a valid state law. Georgia Anti-Mass Act at OCGA 161138. I will refer to the mass law in that act. That law is an admission meter for the mass, a quote for another item of the Civil Law in this case, for narrowly defined statutory exceptions, such as wearing a typical mask during a holiday or in addition to that holiday. The issue today is not the constitutionality of the mass law. It is merely that the officers will be granted qualified immunity and official immunity given the law as it existed at the time of the arrest. For the purposes of this motion to dismiss, the officers do not dispute the material factual issues set forth in the plaintiff's complaint. And therefore, this case is right for decision on the motion to dismiss. The undisputed facts which are sufficient to grant qualified immunity are as follows. First, Mr. Gates was arrested on November 26, 2014. He was participating in a demonstration in downtown Atlanta that protested the Ferguson, Missouri Grand Jury decision to not allow Officer Darren Wilson to be treated death on the ground. The additional undisputed material facts are as follows. The officers arrested Mr. Gates for wearing a mask in violation of the Georgia mask law. The mask law was a valid state law at the time of the arrest. Mr. Gates was wearing the mask at the time of the arrest and he was not within the four statutory exemptions. When he was arrested, he was peacefully and anonymously protesting. And it's also undisputed that prior to plaintiff's arrest, defendant Whitmire directed the protesters on loudspeakers multiple times that anyone wearing a mask would be arrested. Applying these to qualified immunity, it is undisputed that the officers were acting within the scope of their discretionary authority. Therefore, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate. This is a two-prong analysis. The first prong is that the officers violated a statutory or constitutional right. Within the context of Fourth Amendment for alleged unlawful arrest, plaintiffs must show that the officers lacked arguable probable cause for the arrest. And you're saying that there was arguable probable cause. Yes, we are, Your Honor. You may also be saying there was real probable cause. I am, Your Honor. I believe both existed. But you're asking us to ignore Miller in its entirety. Because Miller said it would be absurd to interpret the statute to prevent nonthreatening political mask wearing. Miller imposes on law enforcement officers, as in other circumstances, some indicia of the mens rea of either being threatening. And I think you just acknowledged that Mr. Gates was just walking along in the mask. That's correct, Your Honor. The one area of disagreement is that I would actually request that this Court follow Miller precisely. The Miller holding deals with conviction, not with arrest. And, in fact, in footnote 1 of Miller, the Court explicitly holds that the arrest was constitutional. The implementation of the mens rea requirement, the Court said, may affect the conviction but would not affect the arrest. The Miller Court also does an excellent job of laying out the history of the mask law. And the dissent in Miller is particularly noteworthy because the cases cited by the dissent are similar to the cases cited by the plaintiff in this case, particularly Brandenburg v. Ohio. The mask law was written to, quote, unmask the Klan. It was directed at avoiding the Klan protesting anonymously. And in the Miller case, Mr. Miller was protesting in front of the courthouse square peacefully. That's clear in the case. He was simply wearing the Klan regalia and the Klan hood and was arrested in violation of the mask law, which he was wearing that outfit in order to protest the law. The Miller Court, in an attempt to avoid some of the arguments raised about the law being overly broad, added a mens rea component for conviction. Well, but that's how I don't know how you think the footnote saves you, Miller in full Klan regalia with a hood, which the Court went to great lengths to describe how this comports with their finding there needs to be threatening or menacing. How that footnote that the arrest under these circumstances is constitutional, when in the body of their decision, they expressly warn about non-threatening political expression, which you've acknowledged this is. So it's been, what, 25 years since the Supreme Court made its pronouncement, I would think, that that would be something known to police officers in their duties. I agree, Your Honor. And it's important to note that we're here on qualified immunity. What did the reasonable police officer know at the time of arrest? And it's based on the law at the time of arrest. Here in Georgia, the mask law prohibits mask wearing. And there is a lot of case law that talks about, for purposes of arguable probable cause, a finding of intent typically is not required in a case like this. Someone doesn't have the constitutional right not to be arrested, and often the courts say you will be arrested even though ultimately you may not be convicted. Why the Miller argument, the Miller decision, is binding in this case is because Mr. Miller, while obviously the plaintiff in this case has no connection with the Klan, Mr. Miller, despite the fact that he was peacefully protesting, the Supreme Court of Georgia held explicitly in footnote one that the arrest was constitutional. It said the mens rea requirement may affect the conviction, but not the arrest. And even in the Daniels case, which is the 1994 Supreme Court decision, which again upholds the mask law, the court finds that the mens rea component goes to the conviction. It doesn't go to the arrest. There's another issue regarding the mens rea element. It looks like you want me to stop. Well, because I'm thinking of a conversation we had earlier in another case where police officers are going down the street and they see someone with a bat, and he's carrying a bat. He's probably not going to be arrested because the police see no circumstantial contextual evidence that he wants to assault somebody. It's okay. Bat. Here we have an anti-mask statute. I'm walking along. I have my mask. I've done nothing threatening. I've done nothing that the Supreme Court of Georgia has proscribed. And I'm arrested. I think you're relieving police officers of a responsibility that they actually do take up and do well every day in terms of context. In the cases you cite, Lee and the other Florida case, there were circumstances showing the police officer, no, she wasn't honking because of danger. She was honking because she was tired of being in traffic. I don't understand how you can read that out of Miller. Your Honor, even if we assume for a moment that the officers did not have arguable probable cause, the plaintiff still must show that the law was not clearly established at the time of arrest. Because the mask law was valid in Georgia, this point is particularly important to the ability of police officers to enforce the law. And the Supreme Court has said we don't, as a matter of public policy, want the police to be evaluating the constitutionality of a law before they enforce it. What about the case where they said the gentleman in the park, the reason they were told to leave was clearly because of an illegal reason, and therefore those folks didn't, one, have an obligation to comply with the order to leave, and two, those officers were amenable to suit? So, ma'am, in Cooper v. Dillon, actually, this court gave a decision that is on point. Because in Cooper v. Dillon, there was a First Amendment law, a Florida statute, that this court struck down as being a blatant violation of the First Amendment. In that case, the plaintiff also sued the police chief for enforcing the law, and this court upheld the qualified immunity, saying that because the law was valid at the time of arrest, the police chief could not have known it was unconstitutional. And the argument of plaintiff that it was so blatantly violative of the First Amendment should have put the officer on notice was rejected by this court. The other thing I want to mention is that if you add a mens rea requirement to the mask law, you are requiring officers to perform a content-based analysis of the message or intent of the speaker. It is clearly established by the Supreme Court and this court that the police officers can only do a content-neutral analysis absent a compelling interest. So if you add the mens rea requirement to the law in terms of clearly established prong, there's no way the police officers either can't enforce the law at all or they're going to violate the First Amendment requirement that their analyses be content-neutral. So the dragon, am I right, is there something called a dragon con? Yes, ma'am. It's like Santa Con in New York. So, Your Honor, again, the issue here is not the constitutionality of the law, which particularly given cases like the Supreme Court's Reed v. Town of Gilbert decision, I'm not in any way saying that this law will or will not withstand constitutional scrutiny in the future, Your Honor. What I'm saying is that the police officers who are out on the street enforcing the law must be able to rely on the fact that if the law is on the books in the state of Georgia, they are not going to be dragged through litigation for enforcing it. But I think my point went to your point about the neutrality of the assessment in that I think there was a mention that the dragon con people had not been en masse broken up and arrested, I guess, with the dragon. And I don't know if New York has a similar, they should have, because it really obstructed my way down Fifth Avenue. But the idea being from the circumstances, you are able to ascertain whether or not a violation has occurred. And I'm having difficulty with that. And, Your Honor, I certainly understand that point. I think we have to be careful remembering that this law comes up within the context of First Amendment. And the intent of the law is to prohibit anonymous protest. The issue here is really with the law itself. The officers didn't create that constitutional problem. It's the state of Georgia and the law itself that raises the issue. The officers should not be held liable for enforcing a valid law. If the law is struck down as unconstitutional in the future, the officers cannot enforce it. But the fate of the law should not affect qualified immunity when the law is valid. I believe I'm out of time, Your Honors. Thank you. Good morning, Your Honors, and may it please the Court. My name is Jerry Weber. I'm here with Dan Grossman and Cynthia Counts for the Appellees. Your Honors, the arrest here was based solely on a blanket order to arrest all persons wearing political masks without any facts or inquiry into facts to suggest that Mr. Gates wore the mask to threaten or intimidate. Indeed, the officer, Major Whitmire, who is an appellant in this case who issued that order, was not anywhere near Mr. Gates, did not even see Mr. Gates, issued an order over the radio transmitter. There are two cases that most clearly— Let me ask you this. Let's say the same facts, but in addition to the folks wearing the V for Vendetta mask, we have some folks in Klan regalia. They've got the pointy white sheet. They've got the mask covering their face. And the officers decide, you know, the same reason they arrest your client, direct that the mask be taken off. They make the same direction, and the person in the Klan outfit refuses to take that mask off. In that scenario, would you likewise argue that the police officer would have violated the rights of the person wearing the Klan outfit? In all likelihood, yes, but let me explain why my qualified answer. The Miller decision spends four paragraphs explaining how the Klan mask is, quote, strikes terror in the human heart and talks about the history of that particular mask and how that could inform an officer's judgment. So there might possibly be a different case in that there would still have to be evidence of intent to threaten or intimidate, but the mask goes a long way towards doing that. But you don't think the V for Vendetta mask based on an image of Guy Fawkes, a person whose goal was to blow up Parliament in a march that could get quite volatile at any moment, you don't think that might be equally provocative or cause officers to be concerned? Well, there's no evidence in this record that the officer was even aware of that. Moreover, on Friday the 13th, for example, a hockey mask was worn, and there were certainly terrible things that happened in that movie. So the fact that in one movie someone wore a mask doesn't mean that everyone wearing that similar mask can forever be subject to arrest in the city of Atlanta. Do you think it would be incorrect to say that officers might be reasonably apprehensive of folks in such protests with either Klan mask or V for Vendetta mask? And that's why the Miller case and the Daniels case provide some guidance to officers and have provided guidance to officers for many years now that, one, it would be absurd to interpret the statute to prevent non-threatening political mask wearing, their quote from Miller, so there has to be something more. And there's something more that both Miller and Daniels require. And Daniels said, for clarity, their quote, we require that there be intent to conceal and intent to threaten or intimidate. And that can be determined from factual circumstances. Your Honor, Judge Edmondson, I was reviewing Post v. Fort Lauderdale, 7 Feb. 3, 1552, an inciting bystander's charge. And Your Honor said that there was an arguable probable cause because of the observed words, the threatening behavior and gestures, and a known to the officer previous arrest for resisting. So there are facts. You look at the weapon, the presence of weapons or absence of weapons. You look at the speech that's involved in addition to the mask. You look at the gestures involved in addition to the mask. I thought you were going to cite some cases I've written that said that arresting officers are not capable of making judgments about intent if the elements of a crime — if the statute's physical elements have occurred, that we're not going to say that it was a bad arrest, unconstitutional arrest, because the officer was uncertain about the subjective intent. There are cases like that out there. Yes. I have written some of them, but maybe they don't apply to your case. What do you have to say about that? Well, and the focus is on what kind of intent we're talking about. For example, the Scott case, which the district court primarily relied upon, involved an obstruction of an officer arrest. And first, the Eleventh Circuit said, Arguable probable cause naturally depends upon the elements of the alleged crime. Then the court, in determining whether the intent element existed, looked at the facts. This was someone asking an officer to move their car. And the Eleventh Circuit said, Certainly, the officer did not know the defendant in the criminal case, did not knowingly and willfully obstruct the officer. So the intent element was so lacking that there was no arguable probable cause. Now, there are general intent crimes, for example, trespass, where the acts would be sufficiently indicative of the elements that there would be arguable probable cause. But juxtapose that with… I have a lot of problems in your case. And the principal problem I have is that I think innocent people get arrested all the time completely lawfully. And you can bring in lots of cases showing convictions were overturned. And I do think they're worth looking at and worth talking about. Do not misunderstand me. But I do not think they are controlling on the issue of probable cause for arrest. And I certainly don't think that every patrolman on the street has to make that kind of distinction. We have a lot of cases, I thought, and you can correct me or distinguish them either way, that says, for example, in the arrest context, that we don't expect police officers to have to find every element of the crime to make the arrest. That there can be an admission that can be absolutely clear, well, there are eight elements here and I wasn't sure whether seven was there or not. I didn't know. That that does not make the arrest bad. And then I think it's even amplified, I would suggest to you, Counselor, when you're talking about subjective intent. We're talking here about a large crowd, as I understand it, at night, as I understand it, with repeated warnings to remove your mask, as I understand it. And the mask, I don't want to make too much of the mask, but I will tell you, a mask, which is the effigy of a man who tried to blow up Parliament, does not strike me as being, I mean, he wasn't Bugs Bunny out there. That they got enough together to make arguable probable cause actually does seem right to me. And I don't tell you that to lecture you, Counselor. I tell you that for you to say, that's not right. Let me explain it to you. And please do let me explain. The blanket order here was to arrest all political mask wearers. Everyone. Was political use in the order? All mask wearers. Yes. That could matter. But let me go on. The order was given by someone who did not even observe our client, who is one of the appellants in this case. And I would begin with Virginia v. Black, the cross-burning case. Cross-burning case, the Virginia Supreme Court had said that cross-burning, in and of itself, sufficed to arrest. Their language, suffice to arrest. And the U.S. Supreme Court said no. That, quote, ignores all the contextual factors necessary to decide whether a particular cross-burning was intended to intimidate. Now what does that tell an officer? That tells an officer that there has to be facts. And here there was a blanket order to arrest all mask wearers. And was that the case you decided about cross-burning? Was that an arrest case? The language of the Virginia Supreme Court was that cross-burning, in and of itself, sufficed to arrest. And so was somebody falsely arrested in that case? It was a criminal case, exploring the constitutionality of the statute. Okay. And the language actually said don't arrest these people. Yeah. The language was cross-burning suffices to arrest. Okay. And imagine, for example, burglary, which is 1671 of the Georgia Code, presence on the property of another with intent to commit a felony. Under the city's argument, anyone who is present on the property of another could be arrested because there need be no evidence of that specific intent crime. This is another intent requirement that both the Miller and Daniels case says is one that the officer needs to determine. For clarity, Daniels sets out the elements. Two of those elements are intent to conceal and intent to threaten or intimidate. And Daniels goes into some facts that the officer can look at to make that assessment, as do many other cases from this court. Now, help me again with these Supreme Court cases. Are these arrest cases or are these conviction cases? Well, because they are criminal cases challenging the constitutionality of the conviction, Virginia v. Black is, it's a criminal case. But the language of the Virginia Supreme Court was— No, but the Georgia cases. Oh, excuse me. The Georgia cases. See, as I said to you earlier, people bring in cases and say, you can't convict a man for this. And I'm thinking, that's right. And then they say, and therefore, I want to sue Officer Bob over here. And I'm thinking, that's not exactly the same idea. Sure, I understand. The Miller case was disposed of by the trial court based on the unconstitutionality, it found, of the statute itself. And then the Miller decision in the Georgia Supreme Court added the elements that were specifically set out by Miller and then repeated in Daniels to make the statute constitutional when faced with a free expression challenge, a vagueness and overbreath challenge, and a freedom of association challenge. And Daniels said that those standards were, you know, set them out, one, two, three, four, five, for clarity. Now, one of your questions, Your Honor, was, does an officer have to establish each of those elements?  is so wholly lacking that there is not evidence to support that Mr. Gates wore the mask to threaten or intimidate, the primary factor here, then there is no arguable probable cause. Any more than under a burglary statute, you could arrest somebody for simply being on the premises of another. All right. Let's assume, for the sake of discussion, that that is correct, what you just said. When did the 11th Circuit back away from the holdings that you don't have to have every element of the crime? Now, what you just said is you do have to have evidence of every element of the crime, enough for the officer. That might be a good law. Maybe that should be the law. Maybe it even will be the law. I don't think that's the law in the 11th Circuit today. When did they back away from that? I think, well, Scope actually restates that principle, but Scope says arguable probable cause naturally depends on the elements of the alleged crime. So you look at all the elements, and in Scope, they found that in particular the mens rea element was lacking, the knowing and willfully obstructing an officer. So the 11th Circuit says that element is lacking on these facts. There's some evidence because she's asking him to do something, but there's not enough evidence because you look at the proximity, what she said, how she gestured, all the facts that an officer has to look at. And so I would point to the Scope case as being the primary case to look at on that part of the analysis. And I think it's important to look at the implication of the city's position. The city says that a blanket order to arrest all mask wearers insulates all officers who act pursuant to that. What if the city had issued an order in some way? I don't know if this is technologically possible or not, but maybe it is. They sent every police officer a picture of the mask ordinance verbatim and said, you see a violation of this, you see a probable violation of this, you arrest for it. Is that an unconstitutional order? That would be because the Miller and Daniels case can be utilized to create clearly established law, and they definitively say it would be absurd, absurd in their words, to interpret the statute. They didn't strike the statute down, did they? No, they didn't, but they added elements to it. Then that statute in the books is still lawful. And I'm saying if you send that to every policeman and say, if you see a violation of that statute, now I'm not saying all those people would be convicted. I mean, I trust we're communicating here. I think there are a lot of people who are arrested who cannot be convicted. Well, Your Honor, the Brandenburg case, wearing persons with weapons, was a criminal syndicalism statute. And that statute was interpreted by the U.S. Supreme Court to have to have these additional elements of intent to cause violence and likelihood of that violence occurring as a result of your speech. On pages 12 to 14 of our brief, we set out qualified immunity cases from other circuits, including the Bible Believers case from the Sixth Circuit, that say that qualified immunity was lacking, that it was not a defense to those officers, because they could not make out any factual evidence to support that element, which is very similar to the element that Miller and Daniels espouse of intent to intimidate or threaten. So if the officers get the statute, then Dragon Con better cancel their convention, because there it is, right? I mean, there's no context. It's just you've got a mask on. You're not at Mardi Gras. You're not at a football game. You don't have MERS. We're done. And if you're wearing a Halloween costume the day after or day before Halloween, you're in trouble, because the exception does not apply under the Georgia law. If you are... You're not in trouble if you're not arrested, right? Well, if an officer sees you and they determine to enforce the law... But if you're not arrested, your constitutional rights have not been violated. Oh, absolutely. So, well, that's a good fundamental for us to start from. Thank you, Your Honors. Thank you, Your Honors. I want to first just make one correction and then, Judge Edmondson, circle back to many of the points that you raised, which I find very helpful. The one correction I want to make has to do with Daniels, which my colleague mentioned a few times, the mens rea element that's added. What's important to note on page 464 of that case is that twice, when they talk about the mens rea requirement, they say it is needed for conviction. They do not say it is needed for arrest. That is explicit in Daniels. Mens rea is needed for conviction. Judge Edmondson, and I believe Judge Carnes also to your points, if our police had not issued a blanket order to arrest all people wearing masks and had instead said, arrest these mask wearers because we don't like the message of their mask, but don't arrest them because their message is okay, I believe we would be sitting in this courtroom with a much more difficult case because our, well, not under the mask law, but in general, if our officers are making content-based decisions about the message of the speaker, we are way outside the bounds of this court and the Supreme Court's directives. I think the difference between arrest qualified immunity versus the constitutionality of the law is also very important. The issues that are being raised by my colleagues have to do with the law. Their concerns are about the law when they refer to Brandenburg and other cases that look at various rights of speakers. Those issues that they're concerned about are in the law itself. By going after the arresters, they are suing officers out on the street doing their jobs in their individual capacities. Qualified immunity protects these officers unless they have done something that is absolutely outrageous. In this case, they have simply, in a content-neutral way, enforced a valid state law. And the Supreme Court has been clear that we don't want them looking at the constitutionality before they enforce it. These officers need to be protected by qualified immunity, and we respectfully pray that you grant them that entitlement.  Thank you, Your Honors. We've heard your case, and we will be in recess until tomorrow. Thank you.